FILED

APR - 8 2002

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIAN M. CAMPBELL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. 99-D-2-N |
| | * | |
| CIVIL AIR PATROL, | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff in the above styled cause and would respond to the defendant's motion for summary judgment as follows:

**SUMMARY JUDGMENT STANDARD**

Under the provisions of Rule 56(c), F.R.C.P., summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56(c), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*. In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

1

In entertaining a motion for summary judgment, the court should review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000).

In an employment discrimination case, the court is required to consider the evidence supporting the plaintiff's *prima facie* case and any such evidence tending to undermine the defendant's nondiscriminatory explanation. The existence of a *prima facie* case combined with sufficient evidence for the trier of fact to disbelieve the defendant's proffered nondiscriminatory reason for the employment action it took is sufficient for the trier of fact to infer the ultimate fact of discrimination. *Reeves*, at *9.

## FACTS

The following facts are undisputed and, for the most part, have been set forth by the defendant Civil Air Patrol (hereinafter, "CAP") in its principal brief:

CAP is a federally chartered corporation (10 U.S.C. § 9441) that is presently managed by an eleven-member Board of Governors, four of whom are directly appointed by the Secretary of Defense (10 U.S.C. § 9447).

2

Plaintiff was employed by CAP in September, 1997, and held the position of Cadet Programs Developer/Registrar. He was a low-level functionary with no supervisory authority, except over temporary employees; he answered to a program manager, who answered to the Director of Cadet Programs, who answered to the Executive Director of CAP. (Deft's brief; Campbell depo., 60:6 - 62:3). There is no claim that he was a high-ranking official whose views could be confused with the views of management or that he was a person who could otherwise bind the corporation in any way.

During his tenure at CAP, Plaintiff was alert to and intolerant of discrimination against minorities and women. He lodged a complaint against Col. John Kittle, an active-duty USAF liaison officer, and two high ranking CAP members about racial slurs. Eventually, CAP took action against the CAP members, and the Air Force investigated and reprimanded Col. Kittle.[1] (Campbell depo., 27:20 - 29:2; 33:1 - 52:5).

In early 1998, Plaintiff complained to CAP's National Commander[2] about discrimination against females. He also complained to Dave Brown, who was CAP's Director of Personnel about the same thing. (Deft's brief, pp. 6-7). As the defendant noted, the complaint that did Plaintiff in concerned discrimination and harassment that spawned a suit by Lori Swanson and Doug Isaacson against CAP. (Deft's brief, p.4).

---

[1] Kittle was allowed to retire from the Air Force and was immediately hired by CAP as a Washington liaison; he now serves as CAP's Chief, Counterdrug and Homeland Security. (Exhibit 1, National HQ Electronic Update).

[2] CAP's National Commander served at that time as the chairman of CAP's National Board (NB) and National Executive Committee (NEC). He was an unpaid volunteer. The Executive Director is a paid staff person who reported to the NB and the NEC and served as the National Commander's representative in CAP's National Headquarters. That changed somewhat in 2000 with the creation by Congress of the Board of Governors, to whom the Executive Director now reports.

On October 12, 1998, Plaintiff sent an email to a CAP-interest internet listserver, "CAP-talk."[3] It was sent from his home computer. (Campbell depo., 88:7 - 88:10). The email missive was in opposition to the discriminatory treatment of females which Plaintiff observed, and in opposition to CAP's condonation of racial discrimination. (Exhibit 3).

On October 16, 1998, Plaintiff was terminated from his employment because of the email. (Exhibit 4).

## ARGUMENT

This is not a *McDonnell Douglas* burden-shifting case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), As Judge Posner of the Seventh Circuit put it, "*McDonnell Douglas* is designed to give the plaintiff a boost when he has no actual evidence of discrimination (or retaliation) but just some suspicious circumstances. If he can prove that his protected expression caused him to be fired, he doesn't need *McDonnell Douglas* and it gives him nothing." *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 643 (7th Cir. 2002).

In this case, there is no question that Plaintiff expressed opposition to what he reasonably believed to be unlawful employment practices. (Campbell depo., 217:10 - 220:17). In fact, he reaffirmed his reasons for sending his email in a conversation with CAP's then-Assistant Executive Director, Robert Brooks. (Campbell depo., 82:20 - 84:4).

---

[3] CAP-talk, a privately owned and operated listserver not affiliated with CAP, had at the time approximately 300 subscribers, comprised of employees, current members, former members, and non-members of CAP. While Plaintiff testified that Civil Air Patrol has over 50,000 members, CAP-talk does not have that many, nor did Plaintiff say that it does. (Campbell depo., 75:18 - 76:3; membership list attached as Exhibit 2). The defendant's claim to the contrary, and its repeated references to "tens of thousands" of subscribers, may be dismissed as mere hyperbole.

4

The defendant accurately sets out the Eleventh Circuit's test for survival on a retaliation claim: (1) the plaintiff engaged in statutorily protected activity; (2) he was subjected to an adverse employment action; (3) there was a causal connection between the protected activity and the adverse employment action. *Little v. United Technologies*, 103 F.3d 956, 959. Accurate, but unnecessary. The *Little* analysis borrows heavily from *McDonnell Douglas* and applies, again, to indirect or circumstantial evidence. That analysis does not apply to direct-evidence cases, as this Circuit first held in *Ramirez v. Sloss*, 615 F.2d 163 (5th Cir.1980).[4] See also, *Parris v. Miami Herald Pub'g Co.*, 216 F.3d 1298, 1301 (11th Cir.2000); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

Direct evidence cases are a bit more straightforward. The Eleventh Circuit has noted that "the phrase 'direct evidence,' when used in the context of discrimination claims, does not refer to whether evidence is direct or circumstantial in the ordinary evidentiary sense in which we normally think of those terms. Instead, 'direct evidence' refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination." *Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1111 (11th Cir. 1991). This is just that sort of case.

In *Bass*, the court went on to say:

This view of direct evidence is supported by this Court's case law addressing other types of direct evidence of discrimination. We have held that "[w]here the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the

---

[4] The Eleventh Circuit, in an *en banc* decision, *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5

movant presents conflicting evidence." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996) (emphasis added). Furthermore, "[w]e have defined direct evidence as 'evidence, which if believed, proves the existence of fact in issue without inference or presumption.' " *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir.1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir.1987)) (emphasis added). The factual premise of "direct evidence" of discrimination may be disputed, and it may well be that a plaintiff will have to establish the "direct evidence" by introducing circumstantial evidence. For example, in *Merritt*, we considered whether an alleged statement by an employer constituted direct evidence in support of the plaintiff's retaliation claim. *Merritt*, 120 F.3d at 1189-91. In that case, the employer denied that a decisionmaker had made a statement which, if true, clearly showed a retaliatory motive behind the termination of the plaintiff's employment. *Id.* Nonetheless, we concluded that because a jury could find that the decisionmaker had made the statement, there was direct evidence of retaliation precluding summary judgment.

*Id.*, at 1112.

In a 1999 case, the Eleventh Circuit put it even more succinctly: "After examining the cases on the topic and the legal framework within which the term is used, it is clear that direct evidence can mean nothing other than evidence from which a trier of fact could conclude, more probably than not, that the defendant discriminated against the plaintiff in regard to the contested employment decision on the basis of a protected personal characteristic. *Wright v. Southland Corp.*, 187 F.3d 1287, 1306 (11th Cir. 1999).

Examples abound. In *Merritt, v. Dillard Paper Co.*, 120 F.3d 1181, 1190-91 (11th Cir.1997), cited with approval in *Bass*, the Eleventh Circuit held that a decisionmaker's statement that an employee would be discharged plus express disapproval of a protected activity in a single conversation constituted "direct evidence" of retaliatory discharge. When Cynthia Taylor sued the U.S. Postal Service for gender discrimination, the Eleventh Circuit found that her evidence of discrimination – under either a "direct evidence" approach or a *McDonnell Douglas* approach – presented a jury question sufficient to defeat summary judgment. "Taylor's opposition to her perceived mistreatment due to her gender is statutorily protected expression.

6

She more than adequately outlined adverse employment action resulting from the filing of her discrimination claim. Taylor's protected activity and the adverse employment action were not wholly unrelated. (Internal citation omitted). Thus, Taylor provided the district court with not only direct evidence of retaliation, she also met her prima facie burden of Title VII retaliation. After considering the evidence in the light most favorable to Taylor, we hold that a substantial conflict exists in the evidence to support a jury question." *Taylor v. Runyon*, 175 F.3d 861, 870 (11th Cir. 1999).

Even if the Court were to hold that Plaintiff must present a *prima facie* case of retaliation under the *Little* standard, he has done so. The defendant concedes that Plaintiff can establish the first and second elements of a *prima facie* case, statutorily protected activity and adverse employment action, (Deft's brief, p. 11), so the only remaining question is whether the one was causally connected to the other.

Nothing could be easier because, in the words of the Eleventh Circuit, "The third prong is satisfied if the evidence shows that the protected activity and the adverse action are not totally unrelated." *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 701 (11th Cir. 1999), citing with approval, *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

Is there a relationship between opposition to unlawful employment practices – which CAP concedes is statutorily protected – and the adverse employment action? When Plaintiff was terminated, he was terminated ***solely because of*** one expression of the statutorily protected activity. (Exhibit 4). That's a mighty close relationship.

Yet the defendant goes on to say that Plaintiff may not rely on the October 12, 1998, email transmission to establish the first prong of his case; he must instead rely on his earlier complaints about discrimination. That is true, says the defendant, because the email was not

7

protected activity. Exhibit 3 specifically decries the fact that "the key senior leadership discriminate[s] and harass[es] members/employees of Civil Air Patrol," and that "they have been harassed, discriminated against, and then terminated when they objected to discrimination and fought for their program."

The fact is that the October 12, 1998, email was statutorily protected activity. The text of the message contains some arguably harsh language, but it is not that to which the defendant objected at the time and objects today. The only point on which the defendant relies is that Plaintiff was given instructions not to discuss the particular case he referenced in his email. Plaintiff acknowledges that. (Campbell depo. 79:20 - 80:14).

The defendant also makes a vague reference to a passage on page 10 in the Civil Air Patrol Employee Policy, Benefits and Information Handbook: "In addition, you have a responsibility to avoid unnecessary disclosure of non-confidential *internal* information about the Corporation, its employees and its members." (Emphasis added) (Exhibit 5).

There was no information about the Swanson/Isaacson lawsuit disclosed by Plaintiff that was not public knowledge; in fact the pleadings were public record. As he testified, Plaintiff was trying to get someone – anyone – to address the underlying problems at CAP's National Headquarters that had led to the lawsuit in the first place.

The defendant's defense comes down to the fact that Plaintiff violated the directive given to him to refrain from commenting on the Swanson/Isaacson lawsuit. And that begs the larger questions: If an employee has a right under federal law to oppose certain employment practices, may the employer divest him of that right? Can an employer's fiat trump Title VII?

It would be a curious legal paradigm if an employer were allowed to quell opposition to unlawful practices merely by issuing a policy statement forbidding such opposition.

Yet that is what CAP would have the Court accept in this case – that Plaintiff's rights under 42 U.S.C. § 2000e-3 can only exist in the absence of CAP's policy directives to the contrary. If that applies to CAP, then there is nothing to prevent any employer from simply declaring that no employee may oppose what he perceives to be unlawful employment practices, or to carry out such opposition in defined ways that the employer deems to be harmless.

It is certainly true that any employee owes a duty of loyalty and faithful service to the employer as a condition of at-will employment. In this case there is no contention that Plaintiff did not perform his duties in an exemplary manner in a sincere desire to see his employer – CAP – succeed. As the defendant notes, Plaintiff had been for years (and remains today) a loyal member of the organization to which he all-too-briefly devoted his professional talents.

Despite his years of devoted service, Plaintiff saw conditions that he could not tolerate. He certainly tried to oppose discrimination and harassment within the internal structure of CAP's National Headquarters (as the defendant concedes), but that did not work. He then resorted to other means. And he had the right to do so. As Judge Barkett pointed out in his dissent from *E.E.O.C. v. Total System Services, Inc.*, 240 F.3d 899, 902-03 (11th Cir. 2001), there is no exhaustive list of the means by which an employee may oppose discrimination in the workplace. The EEOC Compliance Manual, Judge Barkett noted, in citing a Sixth Circuit case, "has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer--e.g., former employers,

9

union, and co-workers. EEOC Compliance Manual, (CCH) ¶ 8006. (Footnote omitted).[5] The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable,[6] and that the opposition be based on 'a reasonable and good faith belief that the opposed practices were unlawful.' Id." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

In *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140-41 (5th Cir., 1981 [prior to October 1, 1981]), the Eleventh Circuit's predecessor held that the plaintiff's "boycott and picketing activities" were reasonable oppositional activities and were entitled to protection.

In *Equal Employment Opportunity Commission*, 1973 WL 3911 (E.E.O.C.) the Commission held that "the act of not reporting for work was protected opposition."

Writing letters directed to persons outside the employer's workplace – including customers of the employer – has been held to constitute protected activity. *Robinson v. Southeastern Pennsylvania Transp. Authority, Red Arrow Div.*, 982 F.2d 892 (3rd Cir. 1993), on remand; *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008 (9th Cir. 1983).

If boycotting, picketing, laying out from work, writing letters to customers, and going to the newspapers are acceptable and protected forms of opposition, then surely sending an email to a CAP-interest mailing list is entitled to at least that much protection.

---

[5] The EEOC's interpretation of Title VII is entitled to be given "great deference by the courts. *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971).

[6] Oppositional activity is unreasonable if it significantly disrupts the workplace or directly hinders the employee's job performance. *Folkerson v. Circus Circus Enterprises, Inc.*, 68 F.3d 480 (9th Cir. 1995). There has been no claim by the defendant that Plaintiff's conduct significantly disrupted the workplace or directly hindered his job performance.

## CONCLUSION

There can be no question that Plaintiff has raised genuine issues of material fact in this case, most particularly, whether he opposed what he saw as unlawful employment practices, whether he did so in a statutorily protected manner, and whether the defendant terminated him for having done so.

The defendant is not entitled to summary judgment in this case; Plaintiff prays that the Court will overrule and deny the motion, allowing this case to proceed to trial.

RESPECTFULLY SUBMITTED on this the _____ day of April, 2002.

_____
JAY LEWIS, (LEW031)
Plaintiffs attorney

OF COUNSEL:
Law Offices of Jay Lewis, L.L.C.
100 Commerce Street, Suite 700
Montgomery, AL 36104
(334) 263-7733

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on the following parties or counsel of record by hand delivery or by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed on this _____ day of April, 2002.

David J. Middlebrooks, Esq.
Sally Broatch Waudby, Esq.
Lehr Middlebrooks Price & Proctor, PC
P. O. Box 370463
Birmingham AL 35237

_____
JAY LEWIS

11

# EXHIBITS NOT SCANNED